UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY GUINN,

                Plaintiff,            Case No. 17-11436

v                                                Honorable Thomas L. Ludington

PRAXAIR, INC., FIBA TECHNOLOGIES,
INC., FIKE CORPORATION, AND
CHART INDUSTRIES, INC.

                Defendant.
_____/

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

On May 4, 2017, Plaintiff filed a complaint against Praxair, Inc. ("Praxair") and Fiba Technologies, Inc. for injuries sustained from a hydrogen explosion. ECF No. 1. On December 19, 2017, Plaintiff filed an amended complaint adding two defendants, Fike Corporation and Chart Industries Inc. ECF No. 27. On September 7, 2018, Praxair filed a motion for partial summary judgment. ECF No. 55. For the reasons explained below, the motion for partial summary judgment will be denied.

**I.**

On December 23, 2014, Plaintiff was scheduled to deliver hydrogen from East Chicago, Indiana to Hemlock Semiconductor in Hemlock, Michigan. *Id.* at 4; ECF No. 55-1 at 39. [1] The trailer used to deliver the hydrogen was owned by Praxair. ECF No. 27 at 3. At the time of the incident, Plaintiff worked as a commercial truck driver for Ruan Transportation Management

---

[1] The amended complaint alleges that the incident occurred on December 23, 2014, but Plaintiff's deposition states that it occurred on December 22, 2014. ECF No. 55-1 at 17. Since neither party has addressed this discrepancy, the date listed in the amended complaint will be used.

("Ruan"). ECF No. 27 at 3. The commercial relationship between Ruan and Praxair is not explained.

Prior to making the delivery, Plaintiff inspected the trailer. ECF No. 55-1 at 36. This included examining the trailer's valves, meters, hoses, and vent knobs. *Id.* Upon arriving at Hemlock Semiconductor, Plaintiff parked the trailer at one of eight hydrogen tanks. ECF No. 55-1 at 30. He chock blocked the trailer's tires, lowered the trailer's airbag, grounded the trailer, and connected a copper grounding wire to the trailer. ECF No. 55-1 at 49–50. Plaintiff then lowered the pressure in the receiving tank and elevated the pressure in the trailer. *Id.* at 53. Hydrogen began pumping from the trailer into the tank. ECF No. 55-1 at 56. At some point, hydrogen explosively escaped the trailer and injured Plaintiff. ECF No. 27 at 5.

Plaintiff alleges in the complaint that as the trailer's owner, Praxair breached its duty of reasonable care in maintaining, testing, and inspecting the trailer. ECF No. 27 at 5–6. He also claims that Praxair was negligent in allowing the trailer to be used and by failing to warn Plaintiff of signs of valve degradation on the trailer. *Id.*

## II.

Praxair now moves for partial summary judgment. ECF No. 55. It contends that the Michigan No-Fault Act (the "Act") applies to Plaintiff's claim and that as a result, it is entitled to immunity under the Act for Plaintiff's economic damages. ECF No. 55 at 1–2; Mich. Comp. Laws 500.3101 *et seq.* The Act addresses various aspects of motor vehicle use and ownership, including insurance coverage, exceptions to the Act, and limitations on tort liability.

### A.

The Act begins by requiring every vehicle owner to have automobile insurance. Mich. Comp. Laws §500.3101. It also requires the automobile insurance carrier to provide benefits to the

insured vehicle owner for bodily injury, regardless of whether or not the vehicle owner was at fault. Mich. Comp. Laws §500.3105. It provides:

> (1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.
>
> (2) Personal protection insurance benefits are due under this chapter without regard to fault.
>
> (3) Bodily injury includes death resulting therefrom and damage to or loss of a person's prosthetic devices in connection with the injury.
>
> (4) Bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant…

Mich. Comp. Laws §500.3105.

**B.**

The Act also creates exceptions for motor vehicle incidents to which the Act does not apply. Among these exceptions is the Parked Vehicle Exception. Unless one of three scenarios applies, an incident involving a parked vehicle falls outside the scope of the Act. It provides:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
>> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
>>
>> (b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.
>>
>> (c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

Mich. Comp. Laws §500.3106(1). The Parked Vehicle Exception also prevents an injured party from obtaining duplicative coverage when they are entitled to workers' compensation benefits for injuries arising from a parked vehicle. It provides:

> (2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, or under a similar law of another state or under a similar federal law, are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:
>
>> (a) Loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from, or secured to, as cargo or freight, a motor vehicle.
>>
>> (b) Entering into or alighting from the vehicle unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled. This subdivision shall not apply if the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from or secured to, as cargo or freight, a motor vehicle.

Mich. Comp. Laws §500.3106(2).

## C.

In addition to regulating insurance coverage and exceptions, the Act limits a party's tort liability in cases involving the "ownership, maintenance, or use" of a vehicle. It provides:

> (3) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101 was in effect is abolished except as to:
>
>> (a) Intentionally caused harm to person or property…
>>
>> (b) Damages for noneconomic loss…
>>
>> (c) Damages for allowable expenses, work loss, and survivor's loss…

Mich. Comp. Laws §500.3135(3).

Typically, plaintiffs will seek no-fault insurance coverage for their injury. However, a defendant may also invoke the Act to benefit from the limitation on tort liability in §500.3135(3). A plaintiff cannot avoid the Act limitation on tort liability when their injury involves a motor vehicle. The plaintiff must "seek recovery within the strictures of the no-fault act" and cannot

- 4 -

bypass them by bringing a general negligence action. *Gunsell v. Ryan*, 236 Mich. App. 204, 209 (1999) (quoting Mich. Comp. Laws §500.3135(3)) (overruled on other grounds).

Nowhere in Plaintiff's amended complaint does he contend that the Act applies. However, this alone does not exempt his claim from the Act's benefits as well as its limitations. *Michigan Bell Telephone Co. v. Short*, 153 Mich. App. 431, 434 (1986). Praxair argues that the Act applies to Plaintiff's claim and that as a result, Plaintiff cannot recover economic damages. ECF No. 55 at 1–2.

## III.

In his amended complaint, Plaintiff raises a single general negligence cause of action and six conclusory theories of breach of duty. The pertinent provisions of Plaintiff's complaint state:

> 22. As the owner of the subject trailer, Praxair, Inc. breached its duty of reasonable care owed to Plaintiff in one or more of the following ways:
>
>> a. failing to maintain the subject trailer in a reasonably safe condition;
>>
>> b. negligently testing or failing to test the subject trailer;
>>
>> c. negligently inspecting or failing to inspect the subject trailer;
>>
>> d. negligently allowing the subject trailer to leave its place of business in an unsafe condition;
>>
>> e. failing to remove the subject trailer from use;
>>
>> f. failing to warn Plaintiff of the signs of valve degradation and the consequences thereof.

ECF No. 27 at 5–6.

The claim provides few facts and no guidance as to the particulars of Plaintiff's claim. In a complaint, the pleader need not provide "detailed factual allegations", but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

Because Plaintiff has presented only conclusory theories of breach, the complaint lacks sufficient factual information to support his legal claims or to apprise the Defendants of the case they are called upon to defend. There is no indication, for example, as to how Praxair acted negligently in its maintenance, testing, or inspection of the trailer. The lack of factual allegations not only limits the Defendants' ability to understand Plaintiff's claims against them, it also limits the Court's ability to understand the claims in assessing the applicability of the Act.

## IV.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## V.

The Michigan Court of Appeals has presented a two-step test to determine when the Act is applicable. *Rice v. Auto Club Ins. Assoc.*, 252 Mich. App. 25, 33 (2002). First, the injury must be "accidental," "bodily," and arise "out of the ownership, operation, maintenance or use of a motor

vehicle as a motor vehicle..." *Id.* (quoting Mich. Comp. Laws §500.3105(1)). Second, the injury may not be excluded under a provision of the Act. *Id.* Both steps of the test are addressed below.[2]

### A.

There is no dispute that Plaintiff's injuries satisfy the "accidental" and "bodily" provisions. Because of the omission of facts supporting the conclusory allegations, it cannot be determined whether Plaintiff's last three identified theories of breach of duty are covered by the Act. By contrast, the language of the first three theories of breach bring them squarely within the bounds of the Act because all three expressly focus on Praxair's maintenance of the trailer. In the context of the Act, "the term maintenance is to be liberally construed in accordance with its common-sense meaning." *Michigan Bell Telephone Co. v. Short*, 153 Mich. App. 431, 435 (1986). Subparagraph (a) of the listed theories uses the actual term "maintain" and subparagraphs (b) and (c) use the terms "testing" and "inspecting." Both testing and inspecting are involved in the maintenance of a vehicle. As such, Plaintiff's three theories of Praxair's breach of duty fall within the scope of the Act.

### B.

The second step of the *Rice* test requires that the injury not be excluded under another provision of the Act. *Rice*, 252 Mich. App. at 33. Plaintiff presents two arguments as to why his claim is excluded from application of the Act.

### 1.

Plaintiff first contends that the tort liability immunity of the Act is not applicable because of the application of Subsection (2) of the Parked Vehicle Exception. ECF No. 65; Mich. Comp.

---

[2] For purposes of the Act, a trailer is considered a motor vehicle. Mich. Comp. Laws §500.3101(i); *Kelly v. Inter-City Truck Lines, Inc.*, 328 N.W. 2d 406 (Mich. App. 1982).

Laws §500.3106(b). Under Subsection (2), the Act is not applicable when the injured party has received worker's compensation for his or her injury.

> (2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969…or under a similar law of another state or under a similar federal law, are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:
>
> > (a) Loading, unloading, or doing mechanical work on a vehicle…
> >
> > (b) Entering into or alighting from the vehicle…

Mich. Comp. Laws §500.3106(2).

Plaintiff contends that this is so because he is eligible for and has received workers' compensation. However, this is only true in cases of automobile insurer liability for PIP benefits. In *North v. Kolomyjec*, the plaintiff was injured while performing maintenance on the defendant's vehicle. 199 Mich. App. 724 (1993). The defendant contended that the Act did not apply because the vehicle was parked at the time of the injury. The court disagreed and explained:

> This is a third-party residual liability case under §3135 of the no-fault act. The clear intent of the Legislature in §3106 was to eliminate duplication of the medical and wage loss benefits of workers' compensation with the first-party medical and wage loss benefits afforded by the no-fault act. Whether that section would apply in a case between plaintiff and his no-fault insurer is not an issue presented by this third-party residual liability case against the owner of the vehicle.

*Id.* at 728–729 (citations omitted).

Accordingly, Subsection (2) of the Parked Vehicle Exception does not apply because Praxair is not an automobile insurer.

**2.**

Plaintiff then argues that even if Subsection (2) does not remove his claim from the Act, Subsection (1) does. As explained above, the Michigan Court of Appeals' held in *North* that §500.3106 only applies to cases involving an automobile insurance carrier. 199 Mich. App. 724 (1993). In its opinion, the court referred to §500.3106 generally and did not distinguish between

Sections (1) and (2). However, applying the court's reasoning to the entirety of §500.3106 would place it at odds with the language of the statute. Subsection (1) makes no mention of workers' compensation. To construe the holding in *North* to mean that Subsection (1) was intended to eliminate duplication of workers' compensation makes little sense when Subsection (1) makes no mention of workers' compensation. This is especially true because Subsection (2) expressly refers to workers' compensation benefits.

Furthermore, in a case decided after *North*, the Michigan Court of Appeals applied §500.3106(1) to a case involving a third-party claim. *Gunsell v. Ryan*, 236 Mich. App. 204 (1999) (overruled on other grounds). In that case, the plaintiff was injured while unloading a truck for his employer. *Id.* at 206. The plaintiff received workers' compensation for his injury and then brought a negligence action against the truck owner. *Id.* at 206–207, 210. To limit his tort liability, the defendant argued that the plaintiff's claim fell under the Act. *Id.* at 208. The court held that §500.3106(2) was unavailable as a defense for the plaintiff because the statute "addresses only whether a plaintiff can recover from his no-fault insurer, not whether a plaintiff can escape the limitations of the no-fault act in his suit against a third-party defendant in a case involving a vehicle *as a motor vehicle*." *Id.* at 210 (emphasis in original).

However, the court then looked to §500.3106(1)(b). *Id.* at n. 5. It determined that plaintiff's claim fell under the Act and that accordingly, §500.3106(1) can be applied to cases in which the defendant is seeking limited tort liability. *See id.* The court concluded, "Under that provision [§500.3106], certain cases involving parked vehicles are excluded from the no-fault act's general abolition of motor vehicle tort liability." *Id.* at 209. Thus, §500.3106(1) may be applicable when a party seeks to limit their liability under the Act.

**a.**

Plaintiff argues that the Act does not apply because his claim does not meet the requirements of the Parked Vehicle Exception under §500.3106(1). A three-step test determines whether an incident involving a parked vehicle avoids the Parked Vehicle Exception. First, the conduct must fall within one of the three scenarios listed under §500.3106(1). *Kemp v. Farm Bureau Gen. Ins. Co. of Mich.*, 500 Mich. 245, 253 (2017). Second, the injury must arise "out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*." *Putkamer v. Transamerica Ins. Corp. of America*, 454 Mich. 626, 635–636 (1997) (emphasis in original). Third, the injury must have "a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for." *Id.* at 636.

Plaintiff argues that none of the three scenarios presented in Subsection (1) are applicable to his claim. Subsection (1) provides as follows:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
> > (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
> >
> > (b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.
> >
> > (c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

Mich. Comp. Laws §500.3106(1).

There is no allegation that Plaintiff parked the trailer in such a way to cause risk within the meaning of Subsection 1(a). To the contrary, Plaintiff's deposition indicates that he was mindful in parking the trailer when preparing it to pump the hydrogen. ECF No. 55-1 at 50. Moreover, Plaintiff was standing next to the trailer at the time of the accident. There is no allegation that he

was "occupying, entering into, or alighting from" the trailer at the time of the explosion within the meaning of Subsection 1(c). Neither Subsection 1(a) nor Subsection 1(c) apply to Plaintiff's claim.

Plaintiff next argues that Subsection 1(b) does not apply because it is unknown whether Plaintiff was touching the trailer at the exact moment of the explosion. ECF No. 65 at 12. In his deposition, Plaintiff described the incident as follows:

> A: I remember that I was looking at the pressure gauge and --
>
> Q: When you said that, you mean the pressure gauge on the tank -- the white tank or your trailer?
>
> A: On that trailer.
>
> Q: Okay.
>
> A: And it started just to wiggle, and the next thing I know I heard a click. And I was standing there by the manual blowdown valve and all of sudden I hear a boom and it just blew me back by the next fence in a ball of fire.
>
> Q: Do you remember how high the pressure reached on your trailer before you heard that click?
>
> A: I don't know. I don't know what it read, but it only took like a tenth of a second from when I heard that click.
>
> Q: To the boom?
>
> A: Right.
>
> Q: Before you heard that click had you made any attempt to blow the pressure down on the trailer?
>
> A: I didn't even have time to do anything because it was like right now, boom. That fast.

ECF No. 55-1 at 57–58. It is not clear from Plaintiff's testimony whether he was touching the valve at the time of the explosion. He explains that he was "standing there by the manual blowdown valve," but he does not indicate whether he was touching the valve at the time of the explosion or not. *Id.* at 58. His statements later in the deposition reflect that he was touching the valve at the time of the explosion.

> A: Right. But that one [the valve] was seized and you couldn't turn it.
>
> Q: Do you remember if you tried to turn it.

- 11 -

> A: I did try to turn it.
>
> Q: Now you told me that earlier and we talked about this a second ago and I want to make sure I understand. Did you try to turn it after the explosion?
>
> A: I tried to do it -- I was standing there trying to turn it when that explosion blew me backwards…

ECF No. 55-1 at 59.

Plaintiff contends that the discrepancy in the deposition testimony makes it unclear as to whether he was in contact with the trailer at the exact moment of the explosion. ECF No. 65 at 12. However, the statute does not require such precise temporal proximity. It only requires that the "injury was a direct result of physical contact with equipment permanently mounted on the vehicle." In his deposition, Plaintiff testified that he touched the manual blowdown valve on the trailer immediately prior to or at the time the explosion occurred. Additionally, his deposition indicates that he made physical contact with other parts of the trailer as he prepared it to pump the hydrogen. ECF No. 55-1 at 50.

The more significant issue is whether Plaintiff's injury was a "direct result of physical contact with equipment permanently mounted" on the hydrogen trailer. Mich. Comp. Laws §500.3106(1)(b). For example, in *Drake v. Citizens Ins. Co.*, the plaintiff injured his hand after coming in contact with an auger on a grain delivery truck. 270 Mich. App. 22 (2006). In *Beck v. Alpine Shredders Ltd.*, the plaintiff injured his hand after touching a conveyor belt on a paper shredder truck. 2018 WL 1733443.

In this case, the lack of factual development limits the Court's ability to address the question of whether Plaintiff's injuries were a "direct result" of his physical contact with the hydrogen trailer. The trailer's explosion caused his injuries, but it is not clear what caused the explosion. Neither Plaintiff's complaint nor Praxair's motion papers assist in answering this

question. Praxair's Director of Safety for U.S. Industrial Gasses, Dan Rathgeber, testified in his deposition that Plaintiff caused the explosion.

> "[T]here were two causes. When we say 'caused the incident,' we need to be talking about the focal point here, and we were looking at the injury to Mr. Guinn, so Mr. Guinn's really [sic] lack of operational discipline, not lowering the tank pressure to what the procedures and the requirements were caused the incident. And then him also going to the back of the trailer without his required PPE caused the injury to his – to his head."[3]

ECF No. 63-4 at 130. Plaintiff however disputes, for reasons not yet developed, that he did not cause the explosion and that instead it occurred due to Defendants' negligence. ECF No. 27 at 13 ("Plaintiff was not comparatively negligent in any way and did not proximately cause or contribute to his damages."). Neither party addresses this issue in their papers. Based on the evidence and arguments presented, it remains unclear whether Plaintiff's injury was a "direct result of physical contact with equipment permanently mounted" on the trailer. Mich. Comp. Laws §500.3106(1)(b). For this reason, summary judgement on this issue will not be granted at this juncture.

**VI.**

As explained above, a three-step test determines whether an incident involving a parked vehicle avoids the Parked Vehicle Exception. First, the conduct must fall within one of the three scenarios listed under §500.3106(1). *Kemp v. Farm Bureau Gen. Ins. Co. of Mich.*, 500 Mich. 245, 253 (2017). Second, the injury must arise out of the use of the motor vehicle as a motor vehicle. *Id.* Third, the injury must have a causal relationship to the parked motor vehicle. *Id.*

All three requirements must be met for the incident to fall within the purview of the Act. Praxair has not succeeded in proving the first requirement. For this reason, the final two steps of the Parked Vehicle Exception will not be addressed.

---

[3] Mr. Rathgeber went on to explain that the term "PPE" refers to protective equipment that Plaintiff should have been wearing. ECF No. 63-4 at 130.

**VII.**

Accordingly, it is **ORDERED** that Praxair's motion for partial summary judgment, ECF No. 55, is **DENIED**.

Dated: November 21, 2018     s/Thomas L. Ludington
                             THOMAS L. LUDINGTON
                             United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 21, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager